**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JANICE L. NICHOLS and DUSTIN SARLO,
individually, as parents, guardians
and next-of-kin on behalf of their
daughter, KASSIE A. NICHOLS, a minor,**

    **Plaintiffs,**

vs.                                                                    **Case No. 8:03-cv-1998-T-23MSS**

**BRIAN F. BUTLER, M.D.,
RADIOLOGY ASSOCIATES OF
WEST FLORIDA, M.D., P.A.,
a Florida corporation and the
UNITED STATES OF AMERICA,**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration of Defendant, the United States of America's (hereinafter the "United States" or the "Government") Motion to Dismiss, or, alternatively Motion for Summary Judgment (the "Motion") and Plaintiffs' response in opposition thereto. (Dkts. 37 and 45). The District Court Judge referred this matter to the Undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b). (Dkt. 38).

**I.    Procedural History**

On May 19, 2003, the United States Department of Health and Human Services received an administrative claim, in which Plaintiffs alleged medical negligence on the part of government health care providers. (See Ex.1). On June 27, 2003, Plaintiffs filed a complaint in the Circuit Court for Pasco County, Florida, alleging medical negligence on the part of Dr. Sanjeev Tuli ("Dr. Tuli"),

Dr. Ester Tatoy ("Dr. Tatoy"), Dr. Brian Butler ("Dr. Butler") and East Pasco Medical Center ("EPMC"). On September 23, 2003, the State Court complaint was removed to this Court, pursuant to 28 U.S.C. § 1446(d). (Dkt. 1). Also on that date, the Government moved to substitute itself for the individually named Defendants, Drs. Tatoy and Tuli, pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g)-(n), and 28 U.S.C. § 2679(d)(1). That motion was granted on October 17, 2003. (Dkt. 6).

On November 24, 2003, the United States moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2675, based upon Plaintiffs' failure to exhaust administrative remedies. (Dkt. 10).

On February 3, 2004, Plaintiffs filed an amended complaint against Dr. Butler, Radiology Associates of West Florida, EPMC and the Government.[1] (Dkt. 20). Plaintiffs' amended complaint alleges medical malpractice against the United States through services rendered by Drs. Tatoy and Tuli. (Dkt. 20). The United States filed an answer and affirmative defenses to Plaintiffs' amended complaint on April 5, 2004, denying the main allegations of the amended complaint and asserting as its Sixth Affirmative Defense that the statute of limitations barred Plaintiffs' claim and that the Court lacked subject matter jurisdiction. (Dkt. 26). The United States now moves this Court to dismiss Plaintiffs' amended complaint, or, alternatively, for summary judgment.

**II.     Factual Background**

Plaintiff, KASSIE A. NICHOLS ("Kassie"), was born at EPMC in Pasco County, Florida on January 16, 2000 to Ms. Janice Nichols ("Ms. Nichols"). (Dkt. 2). Dr. Tatoy evaluated Kassie after her birth and noted a cystic lesion in the sacral area with an overlying tuft of hair (the "sacral

---

[1] As a result of a mediation conference held on April 20, 2005, EPMC is no longer a party to this case. (Dkt. 49).

cyst" or "tuft of hair"). (Tatoy Depo. U.S. Ex. 2, pp. 20-21). Dr. Tatoy ordered an x-ray of the lumbar spine on January 16, 2000, and an ultrasound on January 17, 2000. Dr. Tatoy suggested that an MRI may need to be done.

Dr. Butler interpreted the x-ray of the lumber spine and the ultrasound. Dr. Butler interpreted the x-ray as negative. (Butler Depo. U.S. Ex. 3 at 29). In his report interpreting the ultrasound, Dr. Butler noted cystic changes underneath the skin and soft cystic structures. (Butler Depo. U.S. Ex. 3 at 87). Also in his report, Dr. Butler noted that a treatment option would be to follow the cystic lesion over time, and he suggested that "an MRI could be attempted at some point." (Butler Depo. U.S. Ex. 3 at 90). Kassie was discharged from EPMC on January 18, 2000.

Kassie was then seen by Dr. Tuli from January 2000 through August 2000.

On September 22, 2000, Dr. Tatoy evaluated Kassie for complaints of fever, cough, runny nose and diaper rash. (Tatoy Depo. U.S. Ex. 2 at 62). Dr. Tatoy diagnosed Kassie with bilateral acute otitis/upper respiratory tract infection and diaper rash. (Tatoy Depo. U.S. Ex. 2 at 63). Dr. Tatoy also inquired as to whether an MRI had been performed on Kassie. (Tatoy Depo. U.S. Ex. 2 at 76).

On October 24, 2000, Dr. Tatoy diagnosed Kassie with, among other things, diaper rash and left acute otitis media. (Tatoy Depo. U.S. Ex. 2 at 65).

On December 1, 2000, Kassie was admitted to EPMC for complaints of constipation, dehydration, reduction in appetite and vomiting. (Tatoy Depo. U.S. Ex. 2, pp.105-106).

On December 3, 2000, while at EPMC, Dr. Tuli, the on-call pediatrician, performed a rectal examination on Kassie because she was not passing stool. (Tuli Depo. U.S. Ex. 4 at 112 L. 11-12). The examination revealed a mass, which Dr. Tuli felt to be a space occupying lesion. (Tuli Depo.

3

U.S. Ex. 4, pp. 80-81). Dr. Tuli advised Ms. Nichols that a mass had been identified. (Tuli Depo. U.S. Ex. 4 at 84).

On December 4, 2000, Kassie was transferred from EPMC to St. Joseph's Hospital ("St. Joseph's"). At St. Joseph's, Kassie was diagnosed with Stage IV malignant sacrococcygeal teratoma in the pelvis area. (Albert Depo. Plaintiffs' Ex. 4, pp. 4-5).

On July 21, 2001, Ms. Nichols' boyfriend, now husband, Adam Brewer ("Mr. Brewer"), conducted internet research about Kassie's condition and her potential future treatment needs. After viewing an article on the internet, Mr. Brewer advised Ms. Nichols to seek counsel. (Nichols Depo. Plaintiffs' Ex. 1, pp. 55-56). On May 19, 2003, Plaintiffs filed their administrative claim against the Government.

### III. Standard of Review

#### A. Motion to Dismiss

The Government attached exhibits and depositions to its Motion (Dkt. 37) and, thus, referred the Court to matters beyond the pleadings. Plaintiffs' response memorandum also refers the Court to matters beyond the pleadings. Therefore, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, because the Court is required to go beyond the pleadings in ruling on this Motion, the Court will treat the Motion as a motion for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. As such, the Court will apply the standard for summary judgment in this Report and Recommendation.

#### B. Summary Judgment

Summary judgement is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there is an absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine when there is sufficient evidence for a reasonable jury to return a verdict in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the lawsuit. Id. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and cite to specific facts that show a genuine issue for trial through an affidavit, depositions, answers to interrogatories or admissions on file. Celotex Corp., 477 U.S. at 324.

In determining whether to grant summary judgment, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the "reasonableness standard" as follows:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference can be reasonably drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should

not grant the summary judgment motion.  See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  In ruling on a motion for summary judgment, the Court does not weigh conflicting evidence or make credibility determinations.  Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)).

## IV. Discussion

The United States asserts that its Motion should be granted because the statute of limitations bars this suit.  Specifically, the United States argues that because Plaintiffs filed their administrative claim on May 19, 2003, Plaintiffs' claim would be barred by the statute of limitations if the claim accrued earlier than May 19, 2001.  The United States argues that because the facts establish conclusively that Plaintiffs' claim accrued prior to May 19, 2001, the two-year statute of limitations under the Federal Tort Claims Act ("FTCA") bars Plaintiffs from bringing this action.

Plaintiffs argue that sufficient facts exist on this record to preclude a legal finding that their claim accrued on or before May 19, 2001; therefore, the statue of limitations does not bar it.   For the reasons that follow, the Undersigned finds that Plaintiffs are correct and reports and recommends that the District Judge **DENY** the Motion.

In order to bring a tort action against the United States, a plaintiff must act within the two-year statute of limitations period established by the FTCA.  The applicable provision provides that "[a] tort against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).  The general rule is that a claim under the FTCA accrues at the time of injury.  United States v. Kubrick, 444 U.S. 111 (1979).

However, in certain situations, such as medical malpractice, when an injury and its cause are not readily apparent, a claim accrues when a plaintiff knows both of: 1) the existence of the injury and 2) the cause of that injury. See Kubrick, 444 U.S. 111, 122-124 (1979); see also Chamness v. United States, 835 F.2d 1350, 1352 (11th Cir. 1988) (stating that if an injury and its cause are not readily apparent, the claim will accrue either at the time that the plaintiff discovers the injury, or in the exercise of reasonable diligence, could have discovered it.).

In this Circuit, "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." Diaz v. United States, 165 F.3d 1337 (11th Cir. 1999) (relying on Price v. United States, 775 F.2d 1491, 1494 (11th Cir. 1985)). Thus, in this case, the Court must determine when Plaintiffs knew, or through the exercise of due diligence reasonably should have known, of the connection between Defendants and Kassie's injury - that Defendants misdiagnosed Kassie's sacral cyst as benign.

Because Plaintiffs filed their administrative claim with the United States Department of Health and Human Services on May 19, 2003, if Plaintiffs knew of both the existence of Kassie's injury and Defendants' connection to it before May 19, 2001, their claim will be time-barred. If Plaintiffs acquired this knowledge on or after May 19, 2001, then their claim will not be time-barred.

Kassie was first diagnosed with a Stage IV malignant sacrococcygeal teratoma (hereinafter the "cancer") on December 4, 2000. (See Dkt. 37 at 13). Therefore, because Plaintiffs knew of the existence of the injury before May 19, 2001, the first prong of the Diaz test has been met.

Thus, the central dispute is as to the second prong, whether Plaintiffs should, or through the exercise of due diligence should have known prior to May 19, 2001, that Kassie's cancer was related

7

to the sacral cyst and was, therefore, misdiagnosed by the Defendants who were responsible for her care.

In this case, there is a genuine issue of fact as to when Plaintiffs knew that the sacral cyst and the cancer were related and, therefore, by inference, that the cancer had been misdiagnosed.

The United States argues that Plaintiffs had actual knowledge that the cancer was related to the sacral cyst in December of 2000. To support this contention, the United States cites to the testimony of Dr. Tuli in his deposition. (See Tuli Depo. U.S. Ex. 4). In his deposition, Dr. Tuli was asked: "During the December 2000 admission at East Pasco Medical Center, in your mind, did you ever draw a connection between the sacral tuft of hair and the mass that you felt on the rectal exam?" (Tuli Depo. U.S. Ex. 4 at 84 L. 6-19). To this question, Dr. Tuli answered: "yes." (Tuli Depo. U.S. Ex. 4 at 84 L.10). He also stated in his deposition that he believed he told Ms. Nichols there was a connection between the mass and the tuft of hair. (Tuli Depo. U.S. Ex.4, pp. 87 L. 21-25 through 88 L.13).

Notably, Dr. Tuli was unable to point to any notes in Kassie's chart establishing conclusively that he had informed Ms. Nichols about a connection between the mass and the tuft of hair. (Tuli Depo. U.S. Ex.4, pp. 104 L. 24-25 through 105 L. 4). While in his testimony Dr. Tuli points to a series of entries noting they cumulatively establish an "association" between the tuft of hair and the malignant mass, which he believed he communicated to Ms. Nichols, he could not point to any entry that established his disclosure to Ms. Nichols of any such association. (See Tuli Depo. U.S. Ex.4, pp. 85-90). Thus, when asked: "So is there an indication in the chart of you telling the mother that there is a connection between the sacral tuft of hair and the abdominal mass?" (Tuli Depo. U.S. Ex.4, pp. 104 L. 24-25 through 105 L. 1), Dr. Tuli answered: "No." (Tuli Depo. U.S. Ex.4 at 105

L. 4). In her deposition, Ms. Nichols denied being told that there was a connection between the mass and the tuft of hair. (Nichols Depo. Plaintiffs' Ex. 1, pp. 28-36).

The United States also argues that because Ms. Nichols knew Kassie was born with a sacral cyst and was diagnosed with cancer in December of 2000, she knew or should have known that the alleged delay in diagnosis of the sacral cyst and the cancer were related. (See Dkt. 37 at 16). The United States further argues that when Ms. Nichols requested an MRI because she concluded the cyst looked bigger, she should have concluded that the sacral cyst and the cancer were related. The Court notes that other than Dr. Tuli's testimony, the United States offers no evidence that any doctors or trained medical personnel discovered that the cancer was related to the sacral cyst or informed Ms. Nichols of that fact.

Plaintiffs argue that Defendants have not demonstrated conclusively that they knew or had reason to know that the sacral cyst may have caused the cancer before May 19, 2001. Specifically, Plaintiffs argue that they did not know about a possible link between the sacral cyst and the cancer in December 2000 and that no doctors or medical personnel at EPMC or St. Joseph's informed Plaintiffs of a link between the cancer and the sacral cyst. (See Nichols Depo. Plaintiffs' Ex. 1, p. 31 L. 15-17; p. 32 L. 6-9; p. 39 L. 22-25). Ms. Nichols claims that the staff at St. Joseph's did not make any comments critical of the medical care that Dr. Tatoy, Dr. Tuli or Dr. Butler provided. (Nichols Depo. Plaintiffs' Ex. 1 at 55). Nor does the record developed thus far indicate that anyone at St. Joseph's suggested that the tuft of hair was related in any way to the cancer diagnosis.

Plaintiffs offer the September 21, 2004, deposition testimony of Dr. Deborah Albert ("Dr. Albert"), the St. Joseph's pediatric surgeon who performed surgery on Kassie on December 8, 2000, as further support for Plaintiffs' contention that they did not know that there was a link between the

9

sacral cyst and the cancer. Plaintiffs claim that Dr. Albert never informed Plaintiffs of any possible link. Dr. Albert's deposition testimony provides support for Plaintiffs' contention. Dr. Albert stated at various points in her deposition that she did not form an opinion regarding Kassie's treatment prior to the December 2000 surgery until after the lawsuit had been initiated. (See Albert Depo. Plaintiffs' Ex. 4, p. 8 L. 1-20; p. 24 L. 7-9; p. 28 L. 18-22). Also, during her deposition, Dr. Albert specifically stated that prior to the initiation of the lawsuit she had no opinion about whether or not the tuft of hair was related to the cancer because at the time, "you could not make that determination." (See Albert Depo. Plaintiffs' Ex. 4 at 10 L. 4-7).

In her deposition, Ms. Nichols testified that she called to schedule an MRI in August 2000 and was advised that the earliest appointment for a non-emergency MRI was in December 2000. (Nichols Depo. Plaintiffs' Ex. 1 at 27). Ms. Nichols indicated that she wanted the MRI because she thought the mass had changed in size. (Nichols Depo. Plaintiffs' Ex. 1, pp. 23-27). However, Ms. Nichols claims that she was informed by either Dr. Tuli or Dr. Tatoy (she could not recall which one) that an MRI was not necessary and that if she wanted one she would have to call and order an MRI. (Nichols Depo. Plaintiffs' Ex. 1, pp. 26-29).

Thus, although Ms. Nichols requested an MRI around August/September 2000 because she thought the cyst looked bigger, she also testified that Drs. Tuli and Tatoy indicated that an MRI was not necessary. (Nichols Depo. Plaintiffs' Ex. 1, pp. 26-29). If this testimony is accepted, under the circumstances a reasonable fact-finder could determine that Kassie's treating physicians dissuaded Ms. Nichols from obtaining further information via MRI and that Ms. Nichols did not know or have reason to know that the sacral cyst and the cancer were related in December 2000.

In other words, Plaintiffs allege that they were never put on notice of a link between the cancer and the sacral cyst in December 2000. Rather, Plaintiffs argue that despite Kassie's surgery

10

they were not aware of the link between the sacral cyst and the cancer until Mr. Brewer conducted independent internet research and found a pertinent internet article in July 2001, which prompted Ms. Nichols to seek counsel. (See Brewer Aff. Plaintiffs' Ex. 5, ¶¶ 3-4).

Drawing all inferences from the evidence in the light most favorable to Plaintiffs and resolving all reasonable doubts in their favor, the Undersigned finds that on the record as developed to date, a genuine issue of fact exists regarding whether Plaintiffs knew or should have known before May 19, 2001, that the infant's cancer was related to the sacral cyst. In this case, a reasonable person could find that Plaintiffs had no knowledge of the cause of the cancer or the cause of the injury before May 19, 2001. Specifically, there is a dispute about whether Plaintiffs were informed of a possible link between the sacral cyst and the cancer in December 2000, and it is undisputed that Plaintiffs did not conduct the internet research until July 2001.

## CONCLUSION

For the aforementioned reasons, the Undersigned Reports and Recommends that the United States' Motion to Dismiss or, alternatively, Motion for Summary Judgment (Dkt. 37) be **DENIED**.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 5th day of August 2005.

MARY S. SCRIVEN
United States Magistrate Judge

## NOTICE TO THE PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record
Judge Steven D. Merryday

11